UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL LOVE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CHSP TRS SAN FRANCISCO LLC,<br><br>　　　　Defendant. | Case No. 20-cv-07259-DMR<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 17 |

Plaintiff Samuel Love filed this case on October 16, 2020 alleging that Defendant CHSP TRS San Francisco LLC violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and California's Unruh Civil Rights Act, Cal. Civ. Code §§ 51-53. Plaintiff filed an amended complaint on January 4, 2021. [Docket No. 14 ("FAC").] Defendant moves to dismiss the FAC for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). [Docket Nos. 17 ("Mot."), 20 ("Reply").] Plaintiff opposes. [Docket No. 19 ("Opp.").] The court held a hearing on March 25, 2021.

For the reasons stated below, Defendant's motion is granted.

I.　**BACKGROUND**

Plaintiff is a paraplegic who uses a wheelchair for mobility. FAC ¶ 1. Defendant owns and operates the Le Meridien Hotel located at 333 Battery Street, San Francisco, CA. *Id.* ¶ 2. Plaintiff alleges that he planned on making a trip to San Francisco in February 2021 and searched for a hotel that could accommodate his disabilities. *Id.* ¶ 14. On September 11, 2020, Plaintiff went to the Hotel's reservation website to book an accessible room. *Id.* ¶ 16. He alleges that the website identifies "very few, if any, accessible features." *Id.* ¶ 18. Instead, the Hotel just "slap[s] the label 'accessible' on all of its public spaces." *Id.* ¶ 19. For example, the Hotel has a page listing its "accessible areas," such as the business center and fitness center, but does not describe any particular

1  features of those areas. *See id.*

2  With respect to guest rooms specifically, the Hotel provides the following information:

3  **Guest Room Accessibility**

4  Accessible guest rooms with 32" wide doorways

5  Accessible route from public entrance to accessible guest rooms

6  Alarm clock telephone ringers

7  Bathroom grab bars

8  Bathtub grab bars

9  Bathtub seat

10  Deadbolt locks, lowered

11  Door night guards, lowered

12  Doors with lever handles

13  Electrical outlets, lowered

14  Flashing door knockers

15  Hearing accessible rooms and/or kits

16  Roll-in shower

17  Shower wand, adjustable

18  TTY/TTD available

19  TV with close-captioning

20  Toilet seat at wheelchair height

21  Transfer shower

22  Vanities, accessible

23  Viewports, lowered

24  FAC ¶ 20. Plaintiff asserts that this list of features still lacks crucial information. *Id.* ¶ 23.
25  Specifically, he asserts that he needs to know "some basic information (actual data, not adjectives)
26  about the core features" of the Hotel's guestrooms, including whether (1) there are at least 30 inches
27  width on the side of the bed to allow transfer from his wheelchair; (2) the desk has sufficient knee
28  and toe clearance; (3) the toilet seat is between 17 and 19 inches high and has the two grab bars

required by the ADA; (4) the sink has sufficient knee clearance, wrapped plumbing to prevent burn contact, and a lowered mirror; (5) the bathing facility is a transfer shower, standard roll-in, or alternate roll-in; and (6) roll-in showers have a shower seat, grab bars, detachable hand-held shower wand, and wall mounted accessories within 48 inches height. *Id.* ¶¶ 26-30. Plaintiff claims that these features are reasonably necessary for him and other wheelchair users to assess whether a given hotel or guest room meets his or her accessibility needs. *Id.* ¶ 32. He alleges that Defendant's failure to provide the required information constitutes a violation of the ADA.

## II. DEFENDANT'S REQUEST FOR JUDICIAL NOTICE

Defendant requests that the court take judicial notice of the following documents:

1. Printouts of pages from the Hotel's website;
2. A list of cases that Plaintiff has filed in California federal courts;
3. Building permit records for the Hotel; and
4. A copy of a consent decree entered between the Department of Justice ("DOJ") and a hotel chain in *U.S. Hilton Worldwide Inc.*, No. 10-cv-1924, ECF No. 5 (D.D.C. Nov. 29, 2010).

[Docket No. 17-2.] The court does not rely on any of these documents in reaching its decision. Accordingly, the RJN is denied as moot.

## III. LEGAL STANDARD FOR RULE 12(B)(6) MOTION

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However, "a court may take judicial notice of 'matters of public record,'" *id.* at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125-26. The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

## IV. DISCUSSION

### A. Reservations Rule

Title III of the ADA prohibits discrimination "on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To succeed on a Title III claim, a plaintiff must establish "(1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007) (citing 42 U.S.C. §§ 12182(a)-(b)). Only the third element is at issue in the present motion.

Public accommodations that were constructed or altered after January 26, 1992 must comply with either the 1991 or 2010 ADA Standards for Accessible Design, depending on the date the

construction or alterations began. 28 C.F.R. § 36.406. Facilities that were constructed prior to January 1992 and have not been altered are not required to comply with the 1991 or 2010 Standards but must still "remove architectural barriers . . . where such removal is readily achievable." *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (quoting 42 U.S.C. § 12182(b)(2)(A)(iv)).

Under the regulations implementing the ADA, "[a] public accommodation that owns, leases (or leases to), or operates a place of lodging" must meet several requirements "with respect to reservations made by any means." 28 C.F.R. § 36.302(e)(1). Relevant here, the regulations require a covered lodging facility to:

> (i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms . . . .

28 C.F.R. § 36.302(e)(1)(i). The regulations also require lodging facilities to:

> (ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs . . . .

28 C.F.R. § 36.302(e)(1)(ii). These two requirements are collectively referred to here as the "Reservations Rule."

Plaintiff asserts that the Hotel's reservation system violates the Reservations Rule by failing to describe the hotel's accessibility features in sufficient detail.

### B. DOJ Guidance

In 2010, the Department of Justice ("DOJ") provided the following guidance regarding the Reservations Rule:

> The Department recognizes that a reservations system is not intended to be an accessibility survey. However, specific information concerning accessibility features is essential to travelers with disabilities. Because of the wide variations in the level of accessibility that travelers will encounter, the Department cannot specify what information must be included in every instance. For hotels that were built in compliance with the 1991 Standards, it may be sufficient to specify that the hotel is accessible and, for each accessible room, to describe the general type of room (e.g., deluxe executive suite), the size and number of beds (e.g., two queen beds), the type of accessible bathing facility (e.g., roll-in shower), and

5

>communications features available in the room (e.g., alarms and visual notification devices). Based on that information, many individuals with disabilities will be comfortable making reservations.
>
>For older hotels with limited accessibility features, information about the hotel should include, at a minimum, information about accessible entrances to the hotel, the path of travel to guest check-in and other essential services, and the accessible route to the accessible room or rooms. In addition to the room information described above, these hotels should provide information about important features that do not comply with the 1991 Standards.

28 C.F.R. § Pt. 36, App. A ("2010 Guidance"). The DOJ also noted that, "once reservations are made . . . . many individuals with disabilities may wish to contact the hotel or reservations service for more detailed information." *Id.*

An agency's interpretation of its own regulations has "controlling weight unless it is plainly erroneous or inconsistent with the regulation."[1] *Miller v. California Speedway Corp.*, 536 F.3d 1020, 1028 (9th Cir. 2008) (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)).

**C.    Defendant's Website**

Defendant argues that the Hotel's website provides the information listed in the 2010 Guidance, including the size and number of beds, type of accessible bathing facility, and the type of communications features. Mot. at 8-9, 19. Plaintiff responds that the 2010 Guidance specifically notes that more information may be required in some circumstances and so the features identified in the Guidance are not exhaustive. Opp. at 4. He argues that, at minimum, hotels should be required to provide information as to the "core, essential features of a hotel guestroom," including the doors,

---

[1] Plaintiff argues that the court should not give deference to the DOJ's interpretation of the Reservations Rule because the language of the regulation is clear. Opp. at 24; *see Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) ("If uncertainty [about a regulation] does not exist, there is no plausible reason for deference [to the agency's interpretation]. The regulation then just means what it means— and the court must give it effect, as the court would any law."). This argument is not persuasive. The Reservations Rule requires hotels to describe their accessible features in "enough detail" to "reasonably permit" individuals with disabilities to assess whether the hotel meets their accessibility needs. Looking solely at the language of the regulation, it is far from clear what constitutes "enough" detail or when an individual's demand for more information is "reasonable." *See Kisor*, 139 S. Ct. at 2410 (finding that ambiguous regulations "involve[] a choice between (or among) more than one reasonable reading" such that "the court must make a judgment call"). Thus, the Reservations Rule on its own is ambiguous and the DOJ's interpretation of the regulation is entitled to deference.

maneuvering clearance at the bed, and bathroom features (i.e. toilet, sink, and shower/tub). *Id.* at 16-19.

This court recently examined the Reservations Rule and 2010 Guidance in detail. *See Love v. Wildcats Owner LLC*, ___ F. Supp. 3d ___, No. 20-cv-08913-DMR, 2021 WL 1253739 (N.D. Cal. Apr. 5, 2021) ("*Wildcats*"). It noted that the Guidance "clearly contemplates that hotels built in compliance with the current Standards may, in some cases, simply state that their rooms are 'accessible' without further detail." *Id.* at \*6; *see* 2010 Guidance ("For hotels that were built in compliance with the 1991 Standards, it *may be sufficient to specify that the hotel is accessible . . . ." * [2] (emphasis added)). However, the court recognized that the 2010 Guidance leaves open the possibility that additional detail may be required in some circumstances. *Wildcats*, 2021 WL 1253739, at \*5. Specifically, the DOJ identified two situations in which more information might be required. First, "[f]or older hotels with limited accessibility features, information about the hotel should include, at minimum, information about accessible entrances to the hotel, the path of travel to guest check-in and other essential services, and the accessible route to the accessible room or rooms. In addition to the room information described above, these hotels should provide information about important features that do not comply with the 1991 Standards." 2010 Guidance. This discussion highlights the DOJ's instruction that older, unaltered hotels must provide specific information about important features that are *not* compliant with the current Standards. It makes sense to focus on such features, since people seeking to book a room labeled as "accessible" can reasonably expect such rooms to be compliant with the current accessibility Standards. The onus should not be on that person to research when the facility was constructed and/or altered to determine whether the hotel is likely to have up-to-date accessibility features. Thus, consistent with the 2010 Guidance, reservation websites for older, unaltered facilities should include information about important features that do not comply with the current Standards.

---

[2] The cited language only refers to the 1991 Standards. At the time the Guidance was released, the 2010 Standards were not yet in effect. However, the Guidance refers to the "current standards" in several places, indicating that the DOJ did not intend to limit its reasoning to the 1991 Standards. *See* 2010 Guidance (stating that "hotel rooms that are in full compliance with current standards may differ"). Accordingly, the court interprets the 2010 Guidance to apply to "current standards," not just the 1991 Standards.

7

The 2010 Guidance also describes a second situation in which more information might be required. The DOJ recognized that even facilities that "are in full compliance with current standards may differ, and individuals with disabilities must be able to ascertain which features—in new and existing facilities—are included in the hotel's accessible guest rooms. For example, under certain circumstances, an accessible hotel bathroom may meet accessibility requirements with either a bathtub or a roll-in shower. The presence or absence of particular accessible features such as these may be the difference between a room that is usable by a particular person with a disability and one that is not." 2010 Guidance. Unlike the first situation described above, where an older facility has features that do not comply with the current Standards, the second situation involves hotels that are fully up-to-date with the most recent Standards. However, even fully compliant facilities may offer a variety of accessibility features that all comply with the current Standards. In the DOJ's example, the Standards permit an accessible hotel room to have *either* a shower *or* a bathtub. For some features, like bathing facilities, it is important for a patron to know which of several acceptable alternatives is provided in order to decide whether that feature accommodates their disability. Accordingly, under the 2010 Guidance, reservation websites should provide information about important alternative features. This reasoning explains the list of features the DOJ said "may be sufficient," since the listed features (type of room, size and number of beds, type of bathing facilities, etc.) are all features that a hotel can provide in multiple ways while still complying with current ADA requirements.

To summarize, the 2010 Guidance focuses on two kinds of information that a hotel must provide in order to comply with the Reservations Rule: namely, information about any "important" features that either (1) do not comply with the current Standards or (2) can be provided as one of several acceptable alternatives. It makes less sense to require fully compliant hotels to specifically identify their already compliant features when such features are the only way to satisfy the ADA's requirements. For example, guestrooms built in accordance with the 2010 Standards must have door openings with a clear width of 32 inches minimum. *See* 2010 Standards § 404.2.3. As noted by the DOJ, older facilities that do not have such door clearance should specifically notify potential patrons that their doorways are narrower than required. *See* 2010 Guidance. Since facilities that do *not*

provide such clearance are required to disclose that information on their reservations website, fully compliant facilities should not be required (under threat of liability) to specifically confirm their compliance since such a requirement is redundant and unnecessary.

The court's construction of the Reservations Rule and the 2010 Guidance rejects aspects of both parties' arguments. The court declines to adopt Plaintiff's interpretation that a hotel must confirm that all of its "core, essential features" are compliant with current Standards. For the reasons explained above, a hotel that is fully compliant with the current Standards need only identify which of several acceptable alternative features the room provides, such as whether it has a shower or a bathtub (both of which are permitted under the Standards). An older hotel that does not comply with the current Standards must explain which important features are noncompliant. Thus, up-to-date facilities do not have to specifically confirm on their reservations system that their features are compliant when such features are the only acceptable way to comply with the current Standards. On the other hand, Defendants seem to argue that hotels only have to provide information about the features specifically identified in the 2010 Guidance. This is also incorrect. The DOJ specifically acknowledged that it "cannot specify what information must be included in every instance." 2010 Guidance. This language clearly indicates that the list of features in the 2010 Guidance is not meant to be exhaustive. As explained above, more information might be required for features that are not compliant with the current Standards or for features that can be provided in one of several acceptable ways.

At the hearing, Plaintiff argued that the court's interpretation would allow hotels to meet the requirements of the Reservations Rule simply by stating that their rooms are "accessible" even if they are not compliant with the current Standards. Not so. If a hotel website represents that its features are accessible when in fact they are not, the hotel would be liable for violating the Reservations Rule and may be liable for structural ADA violations as well. However, a plaintiff would have to physically visit the hotel or be able to allege specific information about the hotel's non-compliance with the current Standards in order to allege that its reservation system violates the Reservations Rule.

With the framework established by the foregoing discussion in mind, the court turns to

Plaintiff's specific allegations about which features Defendant should have identified in more detail.

### 1. Doors

Plaintiff contends that hotel reservation websites should be required to confirm that their guestrooms have doorways that are at least 32 inches wide, as required by the 2010 Standards. Opp. at 17. However, he acknowledges that the Hotel's website does in fact provide such information, so the argument is moot. *See* FAC ¶ 20.

In any case, as explained above, the 2010 Guidance specifically states that older facilities should inform potential patrons if they have narrower doorways than are required by the current Standards. As stated previously, it does not make sense to require facilities to confirm that they are compliant since they are already required to disclose non-compliance. Thus, Plaintiff's argument also fails on the merits.

### 2. Bed

Plaintiff alleges that the Hotel's website does not confirm whether there are at least 30 inches of clear space on the side of the bed so he can transfer to the bed from his wheelchair. FAC ¶ 29. He argues that bed clearance is essential information for wheelchair users and should therefore be provided on a hotel's reservation website. *See* Opp. at 20.

The 2010 Standards require that accessible hotel guestrooms have at least one sleeping area that provides clear floor or ground space of at least 30 inches by 48 inches. *See* 2010 Standards §§ 305.3, 806.2.3. There are no exceptions or alternatives that apply to that requirement in the context of hotel guestrooms. Thus, a hotel guestroom built in accordance with the 2010 Standards must provide the specified bed clearance. Under the court's construction of the Reservations Rule and 2010 Guidance, the Hotel is not required to specifically identify features on its reservations system that are already compliant with the current Standards.

### 3. Toilet

Plaintiff argues that, as a wheelchair user, he needs toilets with seat heights between 17 and 19 inches and adjoining grab bars. Opp. at 18. The 2010 Guidance already requires toilets to have a seat height between 17 and 19 inches and grab bars "on the side wall closest to the water closet and on the rear wall." *See* 2010 Guidance §§ 604.4, 604.5. Thus, while the Hotel would have to

disclose if it is an older facility that does not provide adjoining grab bars or the appropriate seat height, it is not required to confirm that these features are in fact compliant.

### 4. Sink

Plaintiff contends that he needs at least three pieces of information about a bathroom sink in order to determine whether it meets his accessibility needs. As an initial matter, he asserts that a sink must have accessible knee clearance at a minimum 27 inches high for at least 8 inches in depth. The 2010 Standards provides that knee clearance underneath certain elements, including a sink, must be at minimum 30 inches wide and 27 inches high. *See* 2010 Standards §§ 306.3.1, 306.3.5. Thus, the Standards already require the specifications Plaintiff requests. Plaintiff also argues that the ADA requires sink plumbing to be wrapped to protect against burning contact and that the bathroom mirror is lowered to a certain height. Opp. at 18. As Plaintiff acknowledges, these features are required by the 2010 Standards. *See* 2010 Standards §§ 606.4 (pipes under sinks and lavatories), 603.3 (mirror height above lavatories or countertops). To the extent that these features are "important" features under the 2010 Guidance, then a hotel would violate the Reservations Rule by failing to disclose that their sinks do not comply with the 2010 Guidance. Here, however, Plaintiff does not allege that the Hotel is not compliant with the most current Standards. Since the Hotel would already be required to disclose features that are not compliant, it is redundant to require the Hotel to disclose compliant features.

### 5. Showers

Finally, Plaintiff asserts that the Hotel's website should disclose whether its roll-in showers have grab bars, a detachable hand-held shower spray unit, and a seat. Opp. at 19. With respect to grab bars, the 2010 Standards require all accessible showers to have grab bars. *See* 2010 Standards § 608.3. Thus, the Reservations Rule would require an older facility to disclose that they do not have that feature. For the reasons stated above, there is no parallel requirement for a newer facility to affirm its compliance. Similarly, accessible showers are required to have shower wands. 2010 Standards § 607.6. Requiring compliant hotels to specifically confirm that their accessible shower stalls comply with this standard is redundant and unnecessary. In any case, the Hotel's website already states that the Hotel's roll-in showers have adjustable shower wands, so the issue is moot.

11

FAC ¶ 20.

Finally, as Plaintiff acknowledges, the 2010 Standards do not require all accessible showers to provide seats. *See* FAC ¶ 28; *see also* 2010 Standards § 608.3.2. The 2010 Guidance specifically identifies some features, like bathtub benches, as "amenities" that a hotel is not required to list on its reservation system. *See* 2010 Guidance (stating that individuals with disabilities may wish to contact the hotel or reservations services for "more detailed information . . . such as the specific layout of the room and bathroom, shower design, grab-bar locations, and *other amenities* available (e.g., bathtub bench)."). Thus, providing a shower seat for a roll-in shower is optional under the ADA and the 2010 Guidance suggests that the Reservations Rule does not require hotels to list optional amenities.

In sum, the Hotel is not required to specifically confirm that its roll-in showers have grab bars and detachable shower wands since those features are required by the 2010 Standards. The Hotel also does not have to list features that are not actually required by the ADA, such as shower seats.

## V.     CONCLUSION

Plaintiff lists various features that he asserts the Hotel should have, and did not, describe on its reservation website. All but one of these features are mandatory under the 2010 Standards and thus a hotel built in compliance with those Standards need not list its compliant accessibility features on its reservations system. The ADA does not require roll-in showers to have shower seats, and nothing in the Reservations Rule or the 2010 Guidance suggests that hotels must describe optional amenities. Accordingly, Plaintiff has not adequately alleged that the Hotel failed to describe its accessibility features in sufficient detail. Defendants' motion is therefore granted. Since no additional factual detail about the identified features would cure the deficiencies identified in this order, amending the complaint would be futile. Accordingly, the FAC is dismissed without leave to amend. The Clerk is ordered to close this case.

**IT IS SO ORDERED.**

Dated: July 26, 2021



_____
Donna M. Ryu
United States Magistrate Judge